The court now calls case 117021 Stephen A. Skaperdas v. Country Casualty Insurance Company. Are the parties ready to proceed? Ms. Peterson, Mr. Freeman, I understand you've decided to split your time. You understand it'll be your responsibility to keep track of that. Okay, you may proceed. Because we're hoping that I can give Mr. Freeman his five year. May it please the court, counsel. I'm Laura Peterson, and I represent appellant Thomas Laceris in this case. This court should reverse the appellate court's decision and affirm the trial court's dismissal of counts 1 and 2 of plaintiff's complaint and find that there isn't any duty for a captive agent like Laceris to an insured under section 2-2201. The appellate court misconstrued and misapplied section 2-2201, thereby expanding liability and creating a completely new cause of action, which contradicts legislative intent, common law, and the principles of agency law. It also has untoward consequences for the entire insurance industry as well as the public. The appellate court decided to use the insurance code definition of insurance producer because it's not defined in the Insurance Placement Liability Act. By superimposing the insurance code's definition of insurance producer, they fundamentally transformed the meaning and the purpose of the Insurance Placement Liability Act. The appellate court's decision disregards the common law that was in place when 2201 was enacted, as well as all the cases that have followed. Since 1997, no case other than the 4th District's decision in Carr, and in this case where they essentially adopted Carr, have they supported the notion that section 2-2201 imposes a duty on a captive insurance agent to have a duty to the insured in procuring insurance. In making its decision, the appellate court disregarded the rule that they have to presume that the legislature was well aware of the common law when they enacted that legislation. The common law had been a long-standing dichotomy between a captive agent and an independent agent or broker. The captive agent is someone who works for one company, such as country companies, State Farm, Allstate. They have an agent's agreement with that company. It specifies all of the requirements that they have for selling insurance, including the fact that they can only sell that company's insurance. An independent agent or broker, on the other hand, can go out into the marketplace and approach various different companies and find insurance that they think is best suited for the insured. And that's why the case law broke up that duty in saying, if we look at agency law, long-standing, is you have a duty to your principal. In the case of the captive agent, the principal is the insurance company, country companies in this case. In the case of an independent agent, it is actually the client, the insured, because it is that person that they are serving. They are going out into the market to find them the best insurance. And in doing this, that's why we have that dichotomy, well established in the case law. Also, they would have been aware that under common law, insurance producer is used synonymously with the term insurance broker. So the appellate court disregards all of that. They also disregard the rule that statutes will not be interpreted to affect a change in the law, a settled law, unless the terms of that statute clearly require such a construction. What has happened here is a complete change of what was in place. And by doing this without even considering the outcome and looking at what the intent was, they're imposing new liabilities. And if that's the case, you would have to strictly construe the statute under the case law. You would also have to give effect to the minimal amount of change in the common law. That wasn't done with the Fourth District's interpretation. The vast departure from common law. There's no clear language indicating this was intended. There's no legislative history indicating this was intended. Not only is this a departure from the common law as to the brokers and agents, but also for agency law. Basic principle of agency law states that an agent's breach of a duty owed to the principal cannot be an independent basis for the agent's tort liability to a third party. The Fourth District's decision essentially does that. What's important is that Section 2-22 can be reasonably interpreted to codify the common law. You can look at it as preserving the common law duty for brokers who under the common law were called independent agents or insurance producers and say that it is keeping that duty in place, their ordinary care in procuring or renewing insurance, and then doing what the statute was intended to do, to limit liability in their fiduciary relationship to the cases of misappropriation of premiums. The language in this statute does show that they're effecting that change, and there's clear language saying we are limiting the liability in these fiduciary duty relationships. The legislative history doesn't support the court's interpretation either. When did the legislature adopt this new term, insurance producers? Well, the definition section of the insurance code where insurance producer came about did not exist until 2001 per Public Act 92-386. So that was after the Insurance Placement Liability Act was written. So that wasn't in the legislature's mind when they were coming up with the statute. When we are looking at the statute at hand here, we have to assume they were informed by a common law. When was the statute that we're looking at, when was the language insurance producer placed in the statute? 1997 was when this statute at issue came to pass. Then the insurance code provision that the appellate court used to interpret this came after that. That is what came in 2001. Couldn't one make an argument that the legislature knew exactly what they were doing when they amended the insurance code? Well, you could say that, but therefore then you would need to have an implication in there that you are trying to make a change with the Insurance Placement Liability Act. You're looking at creating broad liability. There is nothing in the insurance code. If that's truly what their intent was, they could have made that change in the insurance code, and there is nothing in the insurance code that would do that. The broad application of this just turns everything on the head, and we need to look at what the legislature was intending at that time. It's not up to the court to say, hey, you know what? We're going to change this. This is what we think it should be. Just because the legislature wrote the insurance code that way to broadly regulate insurance sales and the like, which is a completely different purpose than civil liability, we can't say that that was their intent. There would have to be, again, that clear language showing we are making a drastic departure from the common law. It's not present in the Insurance Placement Liability Act nor in the insurance code. Ms. Peterson, is there any cause of action available to the plaintiff as a result of the alleged mistake in this case? There is. There is still the breach of contract claim that is there as well as the declaratory judgment claim. This is just the count as to the negligence claim. Fiduciary duty, right? The fiduciary duty count? There is no fiduciary duty count in this case. So there is just the negligence claim and then a respondeat superior basis for liability against country. Okay. And that is one thing that plaintiffs have said. Well, if we don't have this duty under Section 2-2201, there's no remedy to a party who has something happen to them, and that's not the case. You certainly have action through that insurance company. Remember that a captive agent is an agent of the insurance company. They have those limitations through the insurance company. That is that individual's principle, and that's to whom they're responding. That's why there is action that remains against the insurance company. There are still actions that can exist against an insurance captive agent as well. In that particular situation, there are a couple cases, and basically it is limited to the situation where, as a captive agent, I am saying to you after you complete an application, I will submit this to my insurance company and they will make a decision. If I don't turn in your application, for example, say life insurance and I've got a binder in there and I've accepted your check and then I just sit on it, then there would be a cause of action. But the plaintiff is not without a cause of action here. That is something to remember. We are dealing with a captive agent who has a duty to its insurance company, and then that relationship that the insured has with the insurance company creates that cause of action for the insured with the insurance company. Notably, the statutes express if the party wants to say that we've got a different intent here and we're radically altering the common law standards and liabilities. There needs to be clear and convincing evidence of a specific legislative intent to do so. In Bush v. Squillati, that was recognized. There's nothing, nothing in the legislative history, there's no mention of an intent to expand liability of insurance salespeople in any fashion. There's no hint that it's designed to eliminate this distinction between captive agents and the brokers. The expressed intent is actually to preserve the current negligence liability, not expand it, and again that's for brokers, and notably limit that fiduciary duty liability because the case law up to that point as far as brokers was turning on fiduciary duty cases. And there now the court is saying we're going to limit that to the situation of misappropriation, but you may still bring negligence claims against these individuals. Case law indicates that when a meaning of a statute is not clearly expressed in the statutory language, the court can look beyond the statutory language to consider the purpose behind the law and the evils it's designed to remedy. Well, the evils that this is intending to remedy is that breach of fiduciary duty. It would be then that we are looking at brokers who are acting as fiduciary duties. Captive agents don't have any such fiduciary duties. So if you take into account the legislation's purpose to limit liability for fiduciary duty, there'd be absolutely no relevance to captive agents. The court also should avoid construction that would lead to an absurd result. And the appellate court's decision does lead to an absurd result. The appellate court's interpretation would be that Section 2-2201 would relieve the captive agents from claims of a breach of fiduciary duty. You look at the plain language. The thing is, captive agents don't owe a fiduciary duty. They can't be liable for those claims. Another point is that this legislation was put forth by the Independent Agents Association, and the independent agents, again, are brokers. Obviously, if they're putting forth legislation, their intent is going to be limiting their liability, not broadly overturning the entire insurance industry and expanding liability. To get to all of those things that are not in the statute that you've been talking about, we would have to first find that the statute is ambiguous. Correct, Your Honor. And if we look at the section of the Insurance Code, 500-10, the definition and 2-2201A of the Code of Civil Procedure, we could say it's clear, even though that may not be what the legislature intended. Is that correct? Then you're already going outside the statute, Your Honor. And in order to go outside this particular statute, the Code of Civil Procedure, and look to the Insurance Code, we've got to have that ambiguity when you're looking outside the statute itself. You're saying because the Code of Civil Procedure does not contain the definition of insurance producer. That's correct, Your Honor. And there certainly is ambiguity because, as this Court has recognized, a statute is ambiguous when it's capable of being understood by reasonably well-informed persons in two or more different senses, thus warranting consideration of other sources to ascertain the legislative intent. Obviously, we can have two or more sources because we have all of the appellate cases and then the Fourth District's interpretation. In terms of the negative consequences, I did want to touch on those. This is violating common law and public policy that it's the insurer's duty to review their insurance policy, to make sure they've got adequate coverage, to notify their insurer, the insurance company, of any discrepancies. If this change goes into place, as the Fourth District has, if it stands, that could induce insurers to just simply say, I'm going out for the coverage I want by paying my cheapest premiums, not looking at what my coverage is, sitting until I have a claim, and then, lo and behold, it's not covered, and then go after the insurance captive agent for liability. And the Nielsen v. United Services Automobile Association recognized that problem with such an interpretation. The other problem is that the captive agents are bound by those contractual agreements that I referenced. They are only to sell their own company's insurance, whereas brokers can offer insurance from multiple policies. Under the appellate court's interpretation, a captive agent could be found liable for failing to offer insurance from another company. So my country company's agent, who can only sell country companies, if an insured would have had coverage, say, under a policy from GEICO, then they could bring a claim against my client under this interpretation. That simply yields an absurd result. And even extending that, then, you would have respondeat superior liability for country companies because of its agent for my client not selling GEICO insurance to someone. It simply can't be that case. And that does show that you would... That's not the theory in this case, of course. The argument here is not, I asked them to get me the best price and they gave me this one company and they could have given me a different company. That's not the nature of the negligence that's being alleged here. That's correct, Your Honor. It's not. But that would be, ultimately, what was the result from the Fourth District's interpretation. If you use the plain language that this creates the duty established under Section 2201 that they are saying and you apply to a captive agent, that is exactly what you would have as an outcome from those breach of duty claims. Your Honors, I see that I have gone past my 15 minutes. I want to make sure that Mr. Freeman has some time and I will be back for rebuttal. So if there are questions, then, I'd be happy to take them. Thank you. May it please the Court, Counsel, Stanley Freeman on behalf of Country Casualty Insurance Company. I have just a few comments to make, as the Court will note. My brief submission was very brief and I do adopt the arguments suggested by counsel for LaSarge. And I don't want to beat the proverbial dead horse, so I'm going to keep my comments briefer than I initially intended. The one thing I want to make clear is that the statute, as interpreted and applied by the Fourth District imposes liability on an insurer. There's nothing in the language of the statute which would suggest that an insurer should be responsible. But as is clear from this case, the respondent's superior theory of liability brings that liability to Bruce with the insurer. That's not intended in the statute. And as counsel suggested, there could be potentially absurd results when an agent, a captive agent, is sued because he didn't offer a particular policy or premium or a type of coverage that another insurance company offered, which was not offered by Country Casualty. The agent gets sued under a theory of respondent superior. The insurer, Country Casualty, could be liable to an insured for a policy which they don't write, a coverage which they don't write, underwriting guidelines which they don't subscribe to, and premium prices which are outside their sphere. I would suggest that that is essentially upending the nature of the insurance industry on its head. You've got captive agents. You've got brokers. Captive agents provide a service to the insureds. The insurance industry uses them because they presume that they can offer a better product, insurance coverage at a cheaper price through the agency relationship. By eliminating that protection or that relationship or altering it in this fashion, you're exposing the insurers to liability, to costs which they otherwise would not have. And I would suggest that the application by the Fourth District Court in this case disadvantages insurance agents, captive agents and those insurers which use that form of marketing, because the insurers under a brokerage or an independent agent relationship, there's never going to be that liability to the insurer under this statute. It just stops with the broker in that circumstance. For those reasons, I would respectfully ask this Court to reverse the Fourth District Appellate Court and reinstate the decision of the trial. Thank you. Thank you. Any other? Good morning, Your Honors. Counsel. May it please the Court. My name is Aaron Lauder. I'm here on behalf of Stephen Scopertis, Valerie Day, and Jonathan Jackson. We've heard some about absurd results that could follow the Fourth District's appellate decision in this case. For a minute, first of all, I don't think those are what we are alleging under the Fourth District's interpretation of the statute. I don't think those results are to follow. But I want to talk about an absurd result under the suggestion by the appellant here in this case, in a case where the only liability that a captive agent could have toward an insured is if they just don't file their paperwork on time. I don't see the distinction that makes any sense where not filing the paperwork on time is subject an agent to liability, whereas filing the wrong paperwork or incorrectly filing it would not. It's still the same facts are that an insured has requested a coverage from an agent, an insurance policy. They discussed it. They anticipate it. And then it just doesn't get done right. The agent makes a mistake. They fail to exercise ordinary care. And that's a key point here. We're talking about ordinary care. So just to briefly revisit the facts in this case, because I think they're being lost in some of the arguments being made by the appellants, Mr. Scopertis was living with his fiancée and her son and asked for them to be covered under his policy. They were going to be married in July of 2009, and he wanted them to be covered as though they had the household benefits and everything would be smooth when they got married. She was driving his vehicles, and they wanted that coverage. However, Mr. Scopertis makes that request. A declaration page is issued which lists a driver of the vehicle as a female, age 30 to 64. His premiums change. Mr. Scopertis, a layperson, not trained in the insurance industry, not a licensed insurance producer, presumes that his request has been taken care of, and that his future wife and her son are now covered. And unfortunately, Jonathan, his son, is in a mad car accident. The wedding actually is postponed because he's in the hospital for the weekend. And then they learn more bad news. The at-fault driver only had a $20,000 or $25,000 policy. But thankfully, Stephen had asked Valerie and Jonathan to be added to his policy, only to learn later that because Mr. Laceris, assuming enough facts as true in this case, Mr. Laceris had failed to properly submit the request that Stephen had made, and now they're denied the coverage. But yet, under the appellant's theory, that's Stephen's fault. The insurer is supposed to be reviewing their policies and their declarations page and calling out the agent for making the mistakes. There's no recourse to the agent for the mistake. We do have our contract claim. It's a different set of allegations, a different set of things you have to prove. What happened in this case, allegedly, as we're setting forth, is that Mr. Laceris made a mistake and failed to exercise ordinary care. Under their theory, Mr. Scopertis is responsible. Jonathan Jackson is responsible because they didn't read the policy right when the declarations page listed a female driver and the premiums have changed. I think that's an absurd result in this case. And the results they set forth where Stephen would somehow complain that a GEICO policy would have been better, that is absurd because Stephen wouldn't have requested a GEICO policy for the country. The plain language of the statute is that an insurance producer shall exercise ordinary care in procuring and placing insurance requested by an insurer. I think that's a key point. I think that's what distinguishes a lot of the cases that are cited too. Stephen made this request. He wouldn't have requested a GEICO policy from a country agent. He certainly wouldn't have expected the country agent to provide one. What I'm sure the country's first response would have been, I can't do that. There would have been no reliance. There would have been no agreement. Similar with picking the lowest premiums and then getting mad when there's not enough coverage later in the day or later on when there's an accident. That's not what would have happened because there would never have been any evidence that you requested the coverage. For example, and I think that came up very clearly in a case, Melrose Park v. Carlini. It was a liquor store and they had asked their, it was a broker in that case, although that wasn't a fact that the court focused on. They asked their long-time broker, can you get us all the insurance coverage we need for this? Got the liquor policy, property damage policy, everything else. Never got a work comp policy. So then a worker gets injured, they bring a claim against Carlini, the broker, the insurance producer, and say, hey, we asked you for everything and you didn't give us a work comp policy. The facts were very clear in that case that they had never specifically discussed work comp policy. They never requested a worker's compensation policy. And that was the basis of the decision in Carlini, was that the insurance wasn't requested. And so what the analysis was that the duty that would have been placed on Carlini to sort of read the mind of the insured and anticipate their needs and go out of their way to provide insurance that they never had asked for were not asked for that duty either. It's a very simple case where insurance coverage was requested and not provided due to alleged negligence on behalf of the agent. Is this a statutory interpretation matter? It is based on the issue that has been raised in terms of the definition of insurance producer, which I think is clear in the insurance code that Mr. Luceris is licensed to sell insurance. So is it ambiguous or not? No, it's not ambiguous. I think in light of the insurance code definition of insurance producer, the plain language of the statute is that an insurance producer, which would include anyone licensed to sell insurance in this state, shall exercise ordinary care in procuring and placing insurance requested by an insured. I don't think there's anything ambiguous about that. And I think of all the cases that have been cited by the defendant, none of them really touch on that. They're all other sorts of duties. There's not a request. There's an assumption that a set of earrings would have still been on a policy or an assumption that you would have added more insurance when I told you I was driving the car to haul freight. You should have added more than $50,000 or other sorts of cases. I believe there was one case where you should have known that the person you sold life insurance to was part of a conspiracy to murder the insured. Those are absurd. That's not what we're asking for. This is a very simple statute that alleges a duty of ordinary care for simple negligence, not to read Stevens' mind, not to anticipate his needs, not to know exactly how much coverage would be best for him, but simply to give him what he asked for. But couldn't all those things you've just commented on be, in other cases, the duty of care that was not provided in that particular case? Well, in those other cases were situations where the court held that there was no duty. That's a duty to maybe advise about insurance needs or inquire about specific needs, more of a consulting, a fiduciary type relationship where you're consulting with me about my business and what my insurance needs are. That's not what happened in this case. So you're saying your case could not be used for the parade of horribles that was listed by opposing counsel, namely that the captive agent should have recommended another company's policy? That's exactly what I'm suggesting. Let's say in this case we were now trying to allege that Mr. Lacera should have offered an umbrella policy because that's how catastrophic the injuries were. We wouldn't make that allegation because we never requested one. This was a case where, so it's similar to the Milwaukee Park incident. If they had requested the workers' comp insurance and then it had just not been filed with everything else or not been filled out right, then I think that case would have come out differently. That case would have come out similar to how the Fourth District case came out in today's case. There were discussions of statutory interpretation and how we should be aware that the legislation knew about the common law distinction and the legislative history should matter. I could talk about those. But the first step in statutory construction is look at the plain language of the statute. That is the clearest indication of legislative intent. I just went through the plain language. Legislative intent was that insurance producers, which legislature in another context have identified as anyone licensed to sell insurance, shall exercise ordinary care in placing insurance. I think the fact that those two definitions, those two statutes use the word insurance producer as opposed to specifying a broker or an agent or making any distinction whatsoever is a statement by the legislature that practically speaking the public interacts with these individuals in similar ways. You open the phone book for an insurance agent. You go talk to them. You ask for coverage. And you work with them. In some circumstances where you've got a business or something that's more involved in there, that's when fiduciary issues come into play. But I think Emick has mentioned that there are thousands or maybe millions of these kinds of transactions every year. And we'd open up agents to all sorts of liabilities for these transactions. And I think that fact can be taken the other way. You have millions of individuals, citizens of the state of Illinois, relying on insurance agents to simply do their job and provide them the coverage that they request. And if even a small percentage make a mistake, you've got dozens or hundreds of citizens left holding the bag because they didn't understand a fine distinction in their policy or exactly how their declaration page was read. And I've been doing this a while. I can read a declarations page now for the most part. But when I started, I sure didn't understand it. My clients don't understand it. When I ask them what it is, they don't even know what I'm talking about. So to put that burden on insurance, as opposed to licensed professional insurance agents, is an absurd result. So it was the intent of the legislature in 1997 to abrogate the existing common law distinction between insurance agents and brokers? For this purpose, for the purpose of ordinary care and providing insurance. Fiduciary duties and the agency relationship, I understand there still would be a distinction in many cases between what a broker does for insurance and what an agent does for insurance. But I think it's simply placing and finding insurance in an insurance request, clearly, and there's no distinction in the statute. So I think the intent is plainly seen there that there wasn't intended to be a distinction. It's an insurance producer, anyone who produces insurance, which was later clarified to be anyone licensed to sell it. So I think in this case, given the facts that we have, that's a clear indication of the legislative intent is the statute itself. And so again, the parade of horribles that were heard where people are going to be purchasing insurance for cheap and then claiming that they should have had more coverage, that's not the case. That would all fall under the Melrose Park-Perlaney case where they said you didn't request it, there's no duty to give you things you didn't request. But in this case, where it was specifically requested, there was a mistake made, the insurance paperwork was filed wrong, and my clients missed out on coverage, there's a duty that's codified in the law, 2201 of the section. And I want to point out one more thing. The Talbot case, which was referenced in terms of the filing late, I think that case goes to show that the theory provided by the appellants here that there is no duty besides this one was never the law. I think this common law distinction that an agent never has a duty to be insured is plainly illustrated in Talbot to not be the case. So the fact that the legislator should have known when they passed this law that agents never owe duties to insured isn't the case. There is duties. In this case, they want to say it was specifically to file the paperwork on time, but I think that goes to a duty of ordinary care, which is now codified in 2201. So if there are no further questions, I think I've addressed my points and the brief as well. Thank you for your time. Thank you. Thank you. The parade of horribles has to happen if we interpret Section 2-2201 to create an ordinary duty of care among all insurance producers in the renewing, procuring, binding, or placing coverage requested by the insured or proposed insured. It's going to apply to everything that's happening when you're dealing with insured. Fact of the matter is, in this particular case, we do have to accept the facts as they are pled. But one thing that is left out is the plaintiff's girlfriend was driving his car, and then she was in a car accident, and Country said, okay, we're going to cover it this time, but we need to add her as an additional driver for coverage to happen in the future. So Country actually adds that change. The change is made. Now, his point is, well, my guy doesn't know that. He doesn't understand these things. Then it is his client's obligation under the law to pick up the phone and contact someone and say, hey, I don't understand this. None of that ever happened. The situations, again, with those cases when we are dealing with the fiduciary duty in the cases the plaintiff is bringing up, that duty is owed by that insurance agent to the client. They are looking at what is the best interest for the client. When you have an independent agent, that is what is anticipated and expected by an insurer. When I am going to Country Companies, anybody looks in the phone book, they know they're going to get Country Companies insurance. Now, he brings up the situation where he says, well, my client wouldn't ask for GEICO insurance. He would say, well, I can't sell that to you. I get that, but the outcome is this. When GEICO insurance would have covered it and Country didn't, we have the same outcome. The parade of horribles has to occur if you interpret Section 2201 as the 4th District did. For Plaintiff's Counsel to say that we don't need to say that there's ambiguity if we interpret the statutes together, again, I rely on that argument. The plain language isn't there. We need to look outside the statute and we need to look at the intent to know what we are talking about with Section 2-2201. To say that the legislature was well aware of what it was doing in 1997 based on a definition that didn't occur until 2001 can't be the case. Was there a statute before 1997? For insurance placement liability? No, that was a new statute that created this new, the idea again was to create limited liability in the fiduciary duty relationship. So from the get-go the legislature used this expression insurance producer? No, that is, yes, that would have been from this statute, yes. For the definition and the first time it was defined was in the insurance code subsequently. So the genesis, and I don't know if it was contained in other particular sources. I surmise not because the fact that this matter has been argued and briefed twice, that's never come up. So I believe that the only places that we see it are in this particular statute and in the insurance code. So any negligent conduct against a captive agent is absolved? Essentially, yes, because unless I don't submit my application, where it comes into play then is your relationship as an insured with your insurance company. That's where you have your liability because that is the principle with whom you... And you mentioned public policy. So the public policy is such that, well, in this case, right, when I want two additional named insured, allegedly the agent does not provide that, and a breach of contract action won't cover that, right? Well, the breach of contract, there are cases that address that in this particular situation based on our interpretation. No, that hasn't been briefed and I haven't fully explored that in terms of the breach of contract claim against country, though. That is still going forward. And again, that is because they're saying, we requested it of your agent, Mr. Laceris, and we didn't get it. So they still have that relief available. They're not without a remedy for this situation. It's just against my particular client as opposed to the insurance company. The outcome, if this is interpreted the way that the appellate court interpreted it, will require an overhaul of the entire insurance industry. We right now have the captive insurance relationships that were described by Mr. Freeman. There are many insurance companies that do it that way because, again, it's money saving, they find it efficient. There are some benefits to it insured by doing that because you have one person you go to, all your insurance is from country, you get one paper that has everything you've got on it as opposed to having several different sources. If we interpret 2201 the way that the Fourth District did and create that ordinary care duty across the board, that relationship can't stand because, again, you have that inherent conflict of interest between a captive agent and his insurance company with whom he has an agency relationship and then now having a duty to an insured or even prospective insured. The fact of the matter is, too, no matter what happens, if we have this ordinary duty of care, if an insured isn't getting the coverage he or she wants, they're going to find a way to make a claim and say that the agent made a mistake if we have this option available. So to say in this particular scenario it's going to be okay, it's different than other scenarios, that's not going to be the case. This truly will open the floodgates because the only basis for the duty... But that exists in the broker situation, right? Correct, Your Honor. The only difference is that the broker represents a number of insurance companies, isn't captive to one insurance company. Yes, but then the difference, Your Honor, is I am going into that relationship knowing that I am seeking you out as my insurance agent, as an independent agent. I'm going to you because you can go to a bunch of different places and you're going to be able to find which company has the best insurance for me, your client. There's the difference. As opposed to when I go to country companies and I'm getting homeowner's insurance, I know that you're going to offer me what country companies have. There's the difference. It's the expectations of the insured that are going to be different when you are dealing with the captive versus independent agent. Are there any other questions? There doesn't appear to be. All right, thank you. Just to wrap up then, Your Honor, we would respectfully request that this Court would reverse the 4th District decision and infer the trial court's dismissal with prejudice in Counts 1 and 2 of Plaintiff's complaint. The trial court properly ruled the Saris didn't owe the duty the plaintiff alleged. 2201's interpretation by the appellate court creates a duty for insurance salespeople to bear insurance and prospective insurance across the board. It renders other sections of the statute surplusage. It contradicts longstanding case law. It's not supported by the legislative history. It has adverse public policy effects. This Court should reverse the appellate court's decision and find that there's no duty under Section 2-2201 on the part of the captive agent. And then, if the legislature feels that it is necessary to enact that duty on behalf of the captive agent, the legislature can clearly enact legislation so doing. Thank you. Case number 117021, Stephen Skipertis v. Country Casualty Insurance Company, will be taken under advisement as Agenda 3. Ms. Peterson, Mr. Freeman, and Mr. Lauder, thank you for your arguments today. You're excused at this time. Marshal, the Supreme Court stands adjourned until Thursday, January 15th at 9 a.m. Thank you.